Jonas Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Stephen Ferruolo (Cal. Bar No. 364158)
sferruolo@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ELIZABETH WOOD, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>TRUPANION, INC.<br><br>*Defendant*. | Case No. 3:26-cv-03327<br><br>**CLASS ACTION COMPLAINT** |

# Table of Contents


I. Summary of the Case. ..... 1
II. Parties. ..... 1
III. Jurisdiction and Venue. ..... 2
IV. Facts. ..... 2
A. Drip pricing is unfair and illegal. ..... 2
B. Trupanion's drip pricing. ..... 5
C. Plaintiff bought a Trupanion policy and was charged an illegal $35 administrative fee. ..... 10
D. No adequate remedy at law. ..... 11
V. Class Action Allegations. ..... 11
VI. Claims. ..... 13
Count 1: California Unfair Competition Law (UCL) ..... 13
Count 2: False Advertising Law (FAL) ..... 14
Count 3: Quasi-Contract (Unjust Enrichment) ..... 15
VII. Relief. ..... 16

## I. Summary of the Case.

1. This proposed consumer class action is about drip pricing and junk "administrative" fees charged for Trupanion's pet insurance policies.

2. Drip pricing is where companies "advertise only part of a product's total price to lure in consumers, and do not mention other mandatory charges until late in the buying process." Bringing Dark Pattern to Light, FTC Staff Report (September 2022). This "interferes with consumers' ability to price compare. It manipulates consumers into paying fees that are either hidden entirely or not presented until late in the transaction, after the consumer already has spent significant time selecting and finalizing a product or service plan to purchase." *Id.* Companies "should include any unavoidable and mandatory fees in the upfront, advertised price, and failure to do so has the potential to deceive consumers in violation of the FTCA." *Id.*

3. The legislature recently amended the Consumer Legal Remedies Act to make drip pricing specifically illegal under the CLRA. The CLRA does not apply to insurance. But the legislature made clear that drip pricing has long been illegal under broader consumer protection statutes: "This practice [drip pricing]… is prohibited by existing statutes, including the Unfair Competition Law … and the False Advertising Law." 2023 Cal SB 478.

4. To get a Trupanion quote online, consumers must enter detailed information about their pet. Consumers then customize their premium and get an up-front quote (e.g. $199.85/month). But once a consumer goes to pay, Trupanion tags on a $35 "administrative fee." This fee is not driven by administration costs—it is a junk fee imposed for profit.

5. Ms. Wood bought pet insurance from Trupanion and was charged a $35 administrative fee. She brings this case for herself and similar California consumers who were charged illegal administrative fees.

## II. Parties.

6. Plaintiff Elizabeth Wood is domiciled in Napa, California.

7. The proposed class includes citizens of California.

8. Defendant Trupanion, Inc. is a Delaware corporation with its principal place of business in Seattle, Washington.

## III. Jurisdiction and Venue.

9. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from one or more Defendant.

10. The Court has personal jurisdiction over Defendant because Defendant sold insurance policies to consumers in California, including to Plaintiff.

11. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including Defendant's sale of policies to Plaintiff.

## IV. Facts.

### A. Drip pricing is unfair and illegal.

12. "As more and more commerce has moved online, so too have these manipulative design practices—termed 'dark patterns'" that "trick or manipulate users into making choices they would not otherwise have made and that may cause harm."[1]

13. One example of a dark pattern is drip pricing, in which companies "advertise only part of a product's total price to lure in consumers, and do not mention other mandatory charges until late in the buying process."[2] Companies advertise one price, and then load the purchase up with additional junk fees at the end of the checkout process. The goal of this is to conceal the true cost of the product or

---

[1] *Bringing Dark Pattern to Light*, FTC Staff Report (September 2022), available at https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns%20Report%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%20-%20FINAL.pdf.

[2] *Id.*

service up-front, and prevent comparison shopping. The consumer is lured in based on the lower advertised price, but ends up paying more because of junk fees that are tacked on at the end.

14. The Federal Trade Commission (FTC) has stated that junk fees are "deceptive or unfair," "because they are disclosed only at a later stage in the consumer's purchasing process."[3] "Drip pricing interferes with consumers' ability to price-compare and manipulates them into paying fees that are either hidden entirely or not presented until late in the transaction, after the consumer already has spent significant time selecting and finalizing a product or service plan to purchase."[4] By then, consumers have already committed to the purchase.

15. Drip pricing costs consumers a lot of money. In addition, it harms consumers because it can "weaken competition by making it harder for consumers to price-compare across sellers. An honest business that sets forth the total price of its product at the outset will be at a significant disadvantage when compared to a seller that advertises an artificially low price to draw consumers in, then adds mandatory charges later in the transaction."[5]

16. Drip pricing also artificially drives up the price of products (drives a wrongful price premium). When the full (and more expensive) price of a product is disclosed up-front, this reduces demand and puts downward pressure on the prices that companies can charge. In contrast, when a lower price is disclosed up-front, to lure consumers into the purchase process, and then junk fees are tagged on late in the transactions, this artificially increases demand (completed sales) and thus increases the amount that companies can charge.

---

[3] https://www.federalregister.gov/documents/2022/11/08/2022-24326/unfair-or-deceptive-fees-trade-regulation-rule-commission-matter-no-r207011.

[4] *Bringing Dark Patterns to Light*, FTC Staff Report, at 9 (September 2022), https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns%20Report%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%20-%20FINAL.pdf.

[5] *Id.*

17. The FTC has warned that "companies should include any unavoidable and mandatory fees in the upfront, advertised price." "Failure to do so has the potential to deceive consumers in violation of the Federal Trade Commission Act (FTC Act)."[6]

18. Because drip pricing is unfair and deceptive, it is also illegal under the FTC Act. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce." And, the FTC has "federal rule-making authority to issue industry-wide regulations (Rules and Guides) to deal with common unfair or deceptive practices and unfair methods of competition."[7] The FTC has enacted a final rule specifically regulating hidden fees in the hotel and event ticket industries, and it has made clear that such practices in other industries continue to violate section 5.[8] The "Commission will address [such] unfair and deceptive pricing practices in other industries using its existing section 5 authority." [9]

19. Drip pricing is also illegal under California law. As explained above, this unfair and deceptive practice has long been prohibited under California law, including under California's UCL and FAL.

---

[6] *Id.*

[7] https://www.ftc.gov/enforcement/rulemaking.

[8] https://www.federalregister.gov/documents/2025/01/10/2024-30293/trade-regulation-rule-on-unfair-or-deceptive-fees.

[9] *Id.*

**B. Trupanion's drip pricing.**

20. On Trupanion's website (Trupanion.com) consumers start the purchase process by clicking "Get a quick quote," "Retrieve a quote," or "Get a quote":




21. On the "Pet info" screen, consumers must then enter the following information about their pet:



22. Consumers then advance to the “Pet details” screen, where they must enter more information about their pet:




23. Consumers then click “Get my quote” to advance to the “Plan details” screen. Before a consumer scrolls down, this is what they see:




24. The monthly price ($144.38/month) is displayed in large blue font. Below the monthly price consumers can see how changing the monthly premium would impact what they pay for a vet bill. By sliding the cursor, consumers can customize the deductible and premium. This requires consumers to put time and thought into how much risk they want to take, versus the premium they want to pay.

25. Because this is the key information consumers are looking for, they have no reason to scroll. They can instead click the prominent green "Continue to checkout" button to move on.

26. Next to the "Continue to checkout" button, the "Monthly total" is displayed (e.g. "$144.38 taxes and fees."). The faded grey text is less prominent than the larger, bold blue text that displays the quote (without mention of taxes or fees). And the way this information is displayed suggests that the total already includes taxes and fees (i.e., it lacks language clearly stating that taxes and fees will be extra). And in any case, it does not say what the taxes and fees would be.

27. If a consumer does scroll down before clicking "Continue to checkout," some additional information is displayed:




28. This additional information includes the tiny print statement "in addition to this monthly cost, a one-time fee will be applied at checkout for new members." This is in the smallest font on the page and is lost amongst the clutter and more prominent information. And it does not even say what the fee will be. Clicking the tiny "learn more" link just pulls up a popup box that explains the administrative fee will be used to "cover account set up" (and it does not say how much the fee will be). And this is a misleading explanation: it does not cost Trupanion $35 to set up an account. As with all modern e-commerce, account setup is largely (or entirely) automated via the website.

29. Once a consumer continues to checkout, they arrive at the "Payment" page:




30. Here, only after a consumer enters their address information and scrolls down to enter their payment information, the website states, in small print, that there

will be a $35 administrative fee. And even at this late point, the fee is disclosed in relatively small font, and blended in amongst other information.

31. Naming the fee an "administrative" fee here is misleading again. This name suggests that that size of the fee is driven by what it costs Trupanion to set up a customer's account. But as with all modern e-commerce, account set-up is largely (or entirely) automated. The true purpose of the fee is to increase Trupanion's profits.

32. Similarly, the fine print says that the fee is "used to cover account set up." But it does not cost $35 to set up a customer's online account. The true purpose of the fee is to increase profits.

33. At this point, a consumer has already gone through multiple screens, gotten an original quote for a monthly price, entered detailed information about their pet, considered and selected the premium they want to pay, and entered their address and payment information. After all this, reasonable consumers are not expecting (or looking out for) a junk fee, so the junk fee can be easily missed. And even if a consumer did notice the junk fee, at this late stage there is significant pressure to just go through with it (rather than shop around). This is why drip pricing is an effective way for companies to make extra money. And it is why drip pricing is illegal, regardless of whether consumers ultimately notice the junk fees before paying.

### C. Plaintiff bought a Trupanion policy and was charged an illegal $35 administrative fee.

34. On or around August 5, 2022, while living in Napa, California, Ms. Wood purchased a Trupanion pet insurance policy from the Trupanion website. Ms. Wood does not have access to Trupanion's purchase flow as of August 2022 (only Trupanion has these historical documents). But she believes that her purchase flow was similar to the one shown above.

35. Ms. Wood read and relied on Trupanion's up-front "per month" quote of $45.55 per month[10] (which did not include the administrative fee), in deciding to continue with the purchase (as opposed to shopping around). She did not expect additional junk fees to be tacked on at the end. Plaintiff invested substantial time and effort entering pet details to receive the quote and considering the tradeoff between the deductible and desired coverage. Trupanion's failure to disclose the total price up-front was a substantial factor in Plaintiff's decision to move forward and ultimately complete the purchase, as opposed to looking at other plans. She was not expecting a junk fee and did not notice the $35 junk fee when she made her purchase. Trupanion charged her a $35 junk administrative fee.

**D. No adequate remedy at law.**

36. The CLRA does not apply to insurance. *Uyanik v. Wawanesa Gen. Ins.* Co., No. 22 16685, 2023 U.S. App. LEXIS 31642, at *3 (9th Cir. Nov. 30, 2023). Thus, Plaintiff has no remedy at law and can only bring equitable claims. This is one reason that the UCL and FAL more broadly protect consumers against junk fees, in addition to the CLRA.

**V. Class Action Allegations.**

37. Plaintiff brings the asserted claims on behalf of the proposed class of:

- All California residents who, within the applicable statute of limitations, purchased pet insurance from Trupanion's website and were charged an administrative fee.

38. The following people are excluded from the proposed class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a

---

[10] This price is reflected in her declaration page.

timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

**Numerosity.**

39. The proposed class contains members so numerous that separate joinder of each member of the class is impractical. There are at least tens of thousands of class members.

40. Class members can be identified through Defendant's sales records and public notice.

**Predominance of Common Questions.**

41. There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

- whether Trupanion's drip pricing is illegal under the UCL and FAL;
- what restitution is needed to reasonably compensate Plaintiff and the proposed class.

**Typicality & Adequacy.**

42. Plaintiff's claims are typical of the proposed class. There are no conflicts of interest between Plaintiff and the Class.

**Superiority.**

43. A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

**VI. Claims.**

**<u>Count 1:</u> California Unfair Competition Law (UCL)**

**(By Plaintiff and the Class)**

44. Plaintiff incorporates the facts alleged above.

45. Plaintiff brings this cause of action on behalf of herself and members of the Class.

46. Defendant has violated California's Unfair Competition Law (UCL) by engaging in deceptive, unfair, and unlawful conduct.

47. <u>Unlawful</u>. As alleged in detail above, Defendant engaged in unlawful conduct by violating the FTC Act.

48. <u>Unfair</u>. Defendant's conduct is unfair because the harm to consumers greatly outweighs the public utility. There is no public utility to using drip pricing and junk fees. Junk fees mislead consumers on price, and prevent comparison shopping and competition. This injury was not outweighed by any countervailing benefits to consumers or competition. Late-disclosed fees only injure healthy competition and harm consumers. Companies could easily disclose any such fees upfront. And, as the FTC has found, reasonable consumers get trapped by drip pricing and cannot avoid the junk fees.

49. Defendant violated established public policy against drip pricing. As the legislature stated when it amended the CLRA to specifically prohibit drip pricing, this practice has long been illegal under the UCL and FAL. And while the CLRA does not apply to insurance, California's general public policy against drip pricing does (via the UCL and FAL). Drip pricing is also illegal under the FTC Act.

50. Defendant's conduct was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

51. <u>Fraudulent</u>. As alleged in detail above, Trupanion' s drip pricing misleads reasonable consumers with lower, up-front prices that do not include the administrative fee. Because Trupanion displays a lower, up-front price and suggests

that price includes taxes and fees, reasonable consumers are not looking for, and can miss, junk fees tagged on at the end. Or if consumers do notice the junk fee at the end, they have already been deceived into continuing with (and committing time and effort to) the purchase based on the lower up-front price, rather than shopping around.

52. Reasonable consumers also believe that an "administrative fee" means that the size of the fee is driven by what it costs Trupanion to set up a customer's account. But as with all modern e-commerce, account set-up is largely (or entirely) automated. The true purpose of the fee is to increase Trupanion's profits. Similarly, Defendant says the fee is "used to cover account set up." But it does not cost $35 to set up a customer's online account. The true purpose of the fee is to increase profits.

53. Classwide reliance can be inferred because Defendant's drip pricing was material, i.e., a reasonable consumer would consider the lower up-front pricing important in deciding whether to buy Trupanion insurance.

54. Plaintiff was harmed as a result of Defendant's violations. As alleged in detail above, Plaintiff relied on the lower quoted price (that did not include the administrative fee). And Defendant's drip pricing was a substantial factor in Plaintiff's decision to purchase Trupanion insurance and she did (rather than shopping around).

55. Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (1) they paid illegal and unfair junk fees; and (2) they overpaid for insurance because it was sold at a price premium due to Defendant's drip pricing.

**Count 2: False Advertising Law (FAL)**

**(By Plaintiff and the Class)**

56. Plaintiff incorporates the facts alleged above.

57. Plaintiff brings this cause of action for herself and the Class.

58. Section 17500 of the False Advertising Law prohibits misleading advertising. Cal. Bus. & Prof. Code § 17500

59. As alleged in detail above, Trupanion's drip pricing misleads consumers with lower, up-front prices that do not include the administrative fee.

60. Trupanion knows, or reasonably should know, that this practice is misleading. Indeed, Trupanion decides to include the administrative fee only at the end (instead of up-front) because it knows that this drip pricing will increase sales (while still allowing Trupanion to profit from the junk administrative fee).

61. Trupanion also knows, or reasonably should know, that the "administrative fee" is not really the cost of setting up a new account.

62. As alleged in detail above, Plaintiff saw and relied on Trupanion's lower, up-front pricing (that did not include the administrative fee) and this up-front pricing was a substantial factor in Plaintiff's decision to make the purchase.

63. Classwide reliance can be inferred because Defendant's drip pricing was material, i.e., a reasonable consumer would consider the lower, up-front pricing important in deciding whether to buy Trupanion insurance. Reasonable consumers are not looking for or expecting a junk-fee price increase from the up-front price and can miss the junk fee. Or if consumers do notice the junk fee at the end, they have already been deceived into continuing with (and committing time and effort to) the purchase based on the lower up-front price, rather than shopping around.

64. Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (1) they paid illegal and unfair junk fees, and/or (2) they overpaid for Trupanion insurance because the policies are sold at a price premium due to the hidden fees.

**Count 3: Quasi-Contract (Unjust Enrichment)**

**(By Plaintiff and the Class)**

65. Plaintiff incorporates the facts alleged above.

66. Plaintiff brings this cause of action on behalf of herself and members of the Class.

67. Because Trupanion's administrative fee is illegal, it is void as a purported contract term.

68. As alleged in detail above, Defendant charged Plaintiff and the Class this illegal administrative fee.

69. In this way, Defendant received a direct and unjust benefit, at Plaintiff and the Class's expense.

70. Plaintiff and the Class seek the return of this unjust benefit (the illegal fees).

## VII. Relief.

71. Plaintiff seeks the following relief for herself and the Class:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed class;
- Restitution;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;
- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

Dated: April 20, 2026

Respectfully submitted,

By: /s/ *Stephen Ferruolo*

Jonas Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Stephen Ferruolo (Cal. Bar No. 364158)
sferruolo@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiff*